33 C.C.P.A.(Patents)

## Application of VOIT et al.
### Patent Appeal No. 5057.

Court of Customs and Patent Appeals.

Jan. 7, 1946.

Harris, Kiech, Foster & Harris and Ford W. Harris, Jr., all of Los Angeles, Cal. (Francis D. Thomas and Harry W. F. Glemser, both of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

Four claims (numbered, respectively, 3, 4, 6, and 7) of appellants' application for patent on a football are listed in the record as being involved in this appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting them.

All four claims were rejected by the examiner as lacking invention over prior art which he cited. Claim 6 (which seems to have been substituted for an original claim, numbered 5) was additionally rejected by the examiner (1) "for. being vague and indefinite," and (2) "for being inaccurate and misleading." Claim 7 (apparently added for purpose of appeal after the final rejection by the examiner of the other claims) was additionally rejected "for being inaccurate and misleading."

The board sustained the examiner's rejection of all the claims on prior art. It also sustained rejection of claim 6 on the additional grounds stated by the examiner, holding that the claim is not "based on a detailed disclosure of the steps called for" in the matter of vulcanization, but it disagreed with the examiner's rejection of claim 7 on the additional ground named.

The application states that it is a division of application, serial No. 355,176 which matured into patent No. 2,302,985 issued November 24, 1942, all the claims of which are method claims.

All the claims involved are product claims, of which claim 3 is an example: "3. In an inflatable ellipsoidal football having an inflation valve, the combination of: an inner air retaining rubber bladder; a wall of rubber-coated woven fabric material contiguously outside of and completely enveloping said bladder and consisting of at least four segments, each segment extending lengthwise of the ball from pole to pole thereof and bonded at its edges to adjacent segments to form a continuous stress-transmitting reinforcing layer; a layer of rubber-coated stranded material spirally and contiguously wound upon said wall about the long axis of the football and substantially from pole to pole; and a wear-resisting cover, the rubber of said bladder, fabric material, and stranded material being vulcanized in a continuous one-piece structure." Such limitations as appear in the other claims are hereinafter set forth.

The examiner described the structure in great detail as follows:

"The subject matter of the application involved in this appeal concerns a wall construction for an ellipsoidal football where the wall is formed with a reinforcing element wound on an inner inflatable member at a uniform tension. The football is formed by using a conventional bladder made up of narrow strips secured along their margins to form the air retaining innermost member. After the bladder

is placed in a mold and is inflated, it is given a heat cure which hardens the rubber material of the bladder giving it the definite form of a football. The bladder is then reinforced with strips of woven fabric adhesively applied to the inflated bladder with lapped marginal joints. This covered bladder is then placed in a mold, inflated at a high pressure and is given another heat cure, which fixes it in shape and size.

"After the ball is removed from the mold, it is again inflated and placed in a winding machine where cord or thread is spirally wound upon it, beginning at one of the poles and terminating at the other or opposite pole. The cord or thread is preferably rubberized. End caps consisting of rubberized fabric and adhesively applied to ends of the ball to hold the windings of the cord in place. The cord wound ball is now given another head cure in a mold and afterward provided with a wear-resisting cover. This cover may be a one-piece rubber envelope formed by vulcanizing on the cord-wound ball a number pieces of rubber. An alternative method in making the cover would be to mount the ball in a mold with a space between ball and mold walls and a liquid rubber material forced into the space between the ball and the mold and vulcanized to the ball. In this step lacings of a leather cover may be simulated on the surface of the ball. Instead of using a rubber exterior, a leather cover could be adhesively attached to the cord-wound carcass and pressure applied to the leather cover to provide a proper connection between the cover and cord structure."

The several patents listed as references are: British Patent, 230,554, Mar. 16, 1925; Winterbauer, 2,061,604, Nov. 24, 1936; Riddell, 2,091,455, Aug. 31, 1937; Reach, 2,093,737, Sept. 21, 1937; Reach, 2,175,128, Oct. 3, 1939:

The Winterbauer patent constitutes the basic reference, the rejection being upon it in view of the two Reach patents and the patent to Riddell. With respect to the relevancy of the British patent which relates to "tennis balls and other similarly inflated balls and to the manufacture thereof," and which discloses a ball having a cord layer spirally wound, the examiner said: "The use of partial vulcanizations or heat cures and a final vulcanizing and moulding step is not new in making inflated balls as such steps are described in the last two paragraphs of the provisional specification and in lines 50 to 64 of the complete specification of the British patent."

A description of the Winterbauer patent in sufficient detail is hereinafter recited.

Reach patent No. 2,175,128 shows it to be old to form a football of several longitudinal sections (Winterbauer shows only two sections) and Reach patent No. 2,093,737 shows the use of overlapping segments in making a solid spherical playball. Riddell shows the inflations of balls, such as basket balls and the like, during manufacture.

In the respective decisions of the tribunals of the Patent Office and in the briefs of appellants and the Solicitor for the Patent Office before us each and every feature of appellants' structure, as shown in combination, is minutely analyzed, and the differences between appellants' product and those of the prior art are clearly stated. That differences exist is obvious, but mere differences do not of themselves support patentability. The ultimate question is whether the features of appellants' football are of a character which displays an inventive concept over prior art as applied to structure.

Under the situation existing, the method claims of appellants' patent No. 2,302,985, as of course, are of no moment upon the question of the patentability of the structure.

We think it unnecessary to our decision to set forth the features of the prior art with the great particularity which characterizes the decisions below.

In the brief of the Solicitor for the Patent Office a comparison is made with the prior art of the structure defined in the claims which seems to us entirely accurate, and sufficient to give a correct picture of the matters involved in the controversy. We quote the following parts:

"By way of explaining the basis of rejection claim 3 will be compared with Figs. 11 to 16 of the Winterbauer patent. The claim first calls for an inflatable ellipsoidal football having a valve. The ball shown by Figs. 11 to 16 of the reference is not ellipsoidal, but there would clearly be no invention in making it so, especially in view of Figs. 17 to 22 of the same patent, which show an ellipsoidal ball made in the same general way. The exact shape of the ball is a matter of choice, depending on the use to which it is to be put.

Making the ball ellipsoidal involves no special problem and produces no unexpected result.

Claim 3 next calls for an inner air retaining rubber bladder. This is the rubber lining 113 (Fig. 15) of Winterbauer. Appellant's brief * * * states that the ball of the reference "totally lacks an inner bladder member." The reasons for this statement are not given. Since Winterbauer has an inner rubber layer bonded to the adjacent fabric layer, which is exactly what the appellants have in their final product, it is not clear how one is any more properly called a bladder than the other. The fact that appellants' inner layer was once a separate article is of no significance as far as the final product is concerned, and the claims here presented are based on this product as it stands, and not on its past history.

"The next element of the claim is a wall of rubber-coated woven fabric. This wall is formed by the canvas sections 110 and 111 of the reference, which are rubber-coated in the manner described in lines 48 to 53, column 1, page 2 of the patent in connection with the parts 10 and 11. The patent states that the ball of Figs. 11 to 16 is treated, after winding, in the same manner as the balls previously described. The claim states that this lining has "at least four segments," but this is obviously a matter of choice. Reach 2,-175,128 (Fig. 15) shows that more than four segments may be used if desired, and there is nothing to show that any new or unexpected result is derived from this arrangement.

"The claim next calls for a layer of rubber-coated stranded material spirally wound about the ball. This is the cord 117 which is rubber-coated as described in lines 48 to 53, page 2, column 1. The claim does not state that the cords were coated with rubber before winding and, even if it did, this would be immaterial so far as the final product is concerned, there being nothing of record to show any superiority of cord which is coated with rubber before winding over that which is coated afterward. Whether or not the winding is spiral is purely a matter of choice. The British patent shows that spiral winding is old, and this fact is also expressly conceded in the appellants' specification * * * and this is, moreover, an obvious way of applying a winding.

"The final element of the claim is a wear-resisting cover which is the outer cover described in line 53 et seq., page 2, column 1, of Winterbauer. The claim concludes with the statement that the various layers are vulcanized in a continuous one-piece structure. This bonding is clearly described by the patentee in the sentence beginning in line 70, column 1, page 2.

"It is stated in appellants' brief * * * that in Winterbauer's Figs. 11 to 16 the rubber cover would be vulcanized to both the cord and the fabric. Assuming this to be true, it is immaterial since there is nothing whatever in the claim to preclude such vulcanizing.

"It will thus be seen that claim 3 presents only the following distinctions over Figs. 11 to 16 of Winterbauer: (1) that the ball is ellipsoidal instead of spherical (2) that the fabric layer is made of "at least four sections" instead of two and (3) that the winding is spiral instead of in the form of great circles. None of these features is new per se and none performs any new or unexpected result or has any special coaction with other features in the article claimed. As was properly stated by the Board, the appellants have merely assembled old features and used them to perform their old functions. If the final product is superior to Winterbauer's, and this has not been shown, the superiority results merely from a judicious selection of old features and not from the exercise of invention.

"Claim 4 and claim 6, at least so far as it can be read upon the disclosure of the application here involved, are unpatentable over Winterbauer for the same reasons as claim 3. The functional historical statements in claim 6 as to stages of vulcanization clearly cannot confer patentability on the article, especially in the absence of any showing that a multi-stage vulcanization is superior to a single-stage one in the article claimed. Moreover, Winterbauer, in Figs. 11 to 16 would probably have at least two stages of vulcanization since the inner layer 113 is cured before the application of the outer layer and the final vulcanization.

"Claim 7 omits two of the three minor features of claim 3 which are not found in Winterbauer, i. e., it does not state that the ball is ellipsoidal or that the fabric layer has more than two sections. The functional statement that the ball is a

football defines no structure. Footballs may be spherical, as in the conventional soccer football, as well as ellipsoidal. Claim 7, therefore, depends for its novelty solely on the fact that the winding is spiral which is an old feature, and the claim is thus even more clearly unpatentable than claim 3."

The brief further makes comparison of the claims with Figs. 17 to 22 of the Winterbauer patent which seems to us to answer fully and correctly the arguments of appellants relative to the patentable effect of the limitations which appellants assert are not disclosed in the Figs. so named.

We may say that in the brief for appellants some comment is made upon the fact that the examiner's comparison of the claims was principally made with the disclosures of Winterbauer's Figs. 17 to 22, while the board principally made comparison with the disclosures in Figs. 11 to 16. We do not regard this as being of any controlling significance.

During the prosecution of the application two affidavits were presented, one being the joint affidavit of appellants, and the other by a party named Roberts. These seem to have been presented, in part at least, in an effort to explain certain of the disclosures of the application relative, as stated by the board, to "the succession of heat cures employed in making applicants' product [which] enables the ball to be formed with an integral wall which renders it superior to those in the prior art." The Roberts affidavit also expresses the opinion that the references do not suggest how to make the football disclosed in appellants' application, and the further opinion that appellants' product is superior to other footballs not identified.

The affidavits were given consideration by both the examiner and the board. The substance of their holdings concerning them is well epitomized in the brief of the Solicitor for the Patent Office as follows:

"So far as they purport to explain what the application discloses, they are not admissible (Cooper v. Downing, 45 App.D.C. 345, 1916 C.D. 227,) and so far as they relate to what it was *intended* to disclose they are, of course, immaterial. The public cannot practice an invention on the basis of information which was intended to be given but actually was not.

"The Roberts affidavit concludes with an allegation that the references do not suggest how to make the article *disclosed* in appellants' application. It should be noted that the affiant does not state that the references do not suggest the invention *claimed,* which is the only matter relevant here, nor even that the affiant has read the claims or understands them. Moreover, the statement is, at best, merely an expression of opinion as to patentability and is therefore entitled to no weight (In re Pierce [35 F.2d 781], 17 C.C.P.A. [Patents] 626). It is the province of the Patent Office and the Court to determine what is obvious within the purview of the patent law.

"The Roberts affidavit also expresses the opinion that the appellants' product is superior to certain unidentified prior footballs. The opinion is academic only, and is not based on actual comparative tests. In other words, like the affidavits considered in Re Garrett, 27 App.D.C. 19, 1906 C.D. 645, it 'deals more in conclusions than in fact,' and accordingly is 'entitled to no weight.'" (Italics quoted.)

■ It has been stated hereinbefore that the examiner, in addition to the rejection of claim 6 on prior art, additionally rejected it as being "vague and indefinite" and "inaccurate and misleading." The board did not reverse that holding and appellants failed to challenge its correctness in their reasons of appeal. So, those grounds are not before us for consideration. See In re Boyce, 144 F.2d 896, 32 C.C.P.A., Patents, 718.

■ Upon full consideration of the issues and arguments presented, we are not convinced that there was error in the decision of the board and it is, therefore, affirmed.

Affirmed.