35 C.C.P.A.(Patents)

### Application of DODDS.
### Patent Appeal No. 5416.

Court of Customs and Patent Appeals.

March 2, 1948.

E. V. Hardway, of Houston, Tex. (Percy H. Moore, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

590

JACKSON, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting all of the claims, 10 and 11, of an application, serial No. 431,129, filed February 16, 1942, for a patent alleging new and useful improvements in "Fractionating Apparatus."

The claims were rejected as unpatentable over the following cited prior art:

Solvay, 177,580, May 16, 1876.

Evans et al. (British), 3,445, March 12, 1878.

Wait, 1,983,058, December 4, 1934.

The claims read as follows:

"10. Fractionating apparatus comprising an inclined drum, approximately vertical partitions in the drum spaced apart and spaced from the ends of the drum to provide an inlet chamber, a discharge chamber and intermediate chambers, an inlet pipe entering the inlet chamber, a vapor outlet nozzle leading from the discharge chamber said drum being inclined upwardly from the inlet chamber and there being openings connecting the bottoms of the chambers to allow the unobstructed gravity return flow of liquid continuously from the discharge chamber through the intermediate chambers to the inlet chamber and thus providing for a common body of liquid at the bottom of and extending from end to end of, the drum, whose surface is above said openings and which forms seals with said partition to separate said chambers, a hoodlike vapor conduit, in each intermediate chamber anchored to the partition in the rear and terminating in a restricted, downwardly directed discharge end submerged in the liquid and through which vapor may pass from a rear chamber and be discharged into the liquid in a forward chamber and means for admitting vapor into and withdrawing liquid from the inlet chamber.

"11. Fractionating apparatus comprising an inclined drum, approximately vertical partitions in the drum spaced apart and spaced from the ends of the drum to provide an inlet chamber, a discharge chamber and intermediate chambers, an inlet pipe entering the inlet chamber, a vapor outlet nozzle leading from the discharge chamber, said drum being inclined upwardly from the inlet chamber and there being openings connecting the bottoms of the chambers to allow the unobstructed gravity return flow of liquid continuously from the discharge chamber through the intermediate chambers to the inlet chamber and thus providing for a common body of liquid at the bottom of and extending from end to end of, the drum, whose surface is above said openings and which forms seals with said partitions to separate said chambers, a hoodlike vapor conduit, in each intermediate chamber anchored to the partition in the rear and terminating in a downwardly directed discharge end submerged in the liquid and through which vapor may pass from a rear chamber and be discharged into the liquid in a forward chamber and means for admitting vapor into and withdrawing liquid from the inlet chambers, and an inlet, for a reflux, entering the discharge chamber."

The application relates to a device designed for fractionating, absorbing, and kindred processes wherein there is a counter flow of liquid and vapor in repeated contact. The structure comprises an inclined elongated cylindrical chamber, between the ends of which are partitions secured at the top of the drum and dropping below the liquid level. The partitions divide the drum into end chambers and a number of intermediate chambers. The liquid is introduced into the drum at a point near the bottom of the upper end and flows through the chambers of the drum to an opening on the lower side thereof near its end. The gas is introduced into the lower end chamber through an aperture on the top of the drum and leaves at an opening on the upper side near its upper end after it has passed through hood-like vapor conduits, which are fastened to the partitions, and rapidly bubbled through the body of the liquid flowing in opposite direction from the movement of the gas.

The Wait patent discloses a fractionating apparatus comprising an inclined drum or chamber in which there are vertical partitions forming a plurality of chambers within the drum. The liquid inlet is positioned at the elevated end of the drum and its outlet at the lower elevation. The vapor inlet is at the lower elevation and its exit

at the upper elevation of the drum. The partitions are open at the bottom so as to permit the liquid to flow by gravity from one chamber to another.

The Solvay patent relates to an apparatus for washing and absorbing gases. It discloses a device comprising a series of compartments within an elongated body. The compartments are horizontally situated and in communication with each other by means of an upper and lower series of elbow bent pipes. These pipes project from opposite sides of the compartments. The diameter of the upper pipe is smaller than that of the lower pipe and the upper pipe projects into the lower pipe so that when liquid flows into one end compartment and gas is introduced into the other end compartment, the gas circulates through the upper series of pipes and the liquid circulates from compartment to compartment through the lower series of pipes counter-current to the path of the gas. The projecting ends of the upper series of pipes are serrated.

The British patent relates to "Improvements in the Manufacture of Coal Gas and in the Treatment of Ammoniacal Liquor Obtained in such Manufacture." There is described in the patent an apparatus designed for the removal of sulphur compounds contained in coal gas by a process in which the coal gas is washed with a countercurrent flow of liquid. The apparatus comprises an inclined chamber which is divided into compartments by partitions. The partitions are in communication with each other by means of pipes which dip into the liquid flowing through the compartments. In the partitions there are openings above the liquid level communicating with those pipes and with the gas supply. The compartments further communicate with each other by means of openings in the partitions near the bottom of the chamber. The gas enters at the left hand end of the chamber and passes through the compartments serially, bubbling through the liquid in one compartment before passing to the next. The liquid enters the chamber at the right hand end and flows continuously through the compartments counter-currently to the flow of the gas.

The Primary Examiner relied principally on the patent to Wait and rejected the claims as being unpatentable over that patent in view of either of the other two references. He held that the structure defined by the rejected claims differs from the structure of the Wait patent only by the recitation of the limitation "a hood-like vapor conduit in each intermediate chamber * * * terminating in a downwardly directed discharge end submerged in the liquid * * *." He pointed out that in the Wait structure the gas merely bubbles past the lower end of the partition, but held that that lack of structure in the Wait patent is shown in the British reference. In the examiner's opinion the British patent appeared to be a substantial anticipation of the claims, but he expressed the thought that since the patent to Wait is domestic and has a more complete disclosure, that it offered a better basis for rejecting the claims.

The Board of Appeals concluded that the position taken by the examiner was fully justified. Apparently the question of operativeness of the device of the Solvay patent was raised by appellant before the board. In what respect operativeness was questioned we do not know, except that the board, in holding that such question was not justified, stated that the disclosure of the patent clearly indicated a continuous flow of fluid from its source to where it leaves the tank and a flow of gas from its entrance to its exit in an opposite direction.

Appellant in his brief contends that the apparatus of the Wait patent does not show the hood-like vapor conduits as defined by the claims. It is admitted that there is nothing in the Wait structure disclosing a "hood-like vapor conduit in each intermediate chamber anchored to the partition in the rear and terminating in a restricted, downwardly directed discharge end submerged in the liquid; * * *."

The hood-like conduit set out in the claims has for its sole purpose the conveying of gas from the inlet through the liquid successively in each individual chamber and the gas bubbles through the liquid in each chamber on its way to the exit. The counter flow of gas and liquid used in the Wait structure traps the gas in the individual compartments from which the gas escapes over the end of the partition to the next

succeeding compartment in the form of bubbles. The patent discloses a continuous flow of liquid and a continuous supply of the liquid to be scrubbed. It seems to us that the apparatus of the Wait patent should produce the same results as appellant's in essentially the same fashion.

The manner in which appellant places his conduits, we think, is old as shown in the patent to Solvay and in the British patent. The devices of those references are not fractionating· structures, but this is of no importance for the reason that the structure of the Wait patent is a fractionator. All of the references· disclose structures that are designed to bring a gas and a liquid into intimate contact, and, therefore, as far as the facts here are concerned, they are each in the same art or at least in analogous art.

We do not think that it would involve invention to place the gas conduits of the Solvay patent or those of the British patent in the partitions of the Wait structure. Clearly they are equivalents of the edge structure of the Wait device, and, in our opinion, it would be obvious to make such placement if so desired.

■ Appellant in his brief argues that the Wait structure, from a practical standpoint, can not .operate successfully as a fractionating tower, and he further contends that from a practical standpoint the structure of the Solvay patent is likewise inoperative. There is nothing in the record upon which appellant can successfully base such contention. Therefore, they are merely expressions of opinion and should not be considered as possessing any probative force. In re Pierce, 35 F.2d 781, 17 C.C.P.A.(Patents) 626; In re Voit et al., 152 F.2d 987, 33 C.C.P.A.(Patents) 737; Metropolitan Engineering Co. v. Coe, 78 F.2d 199, 64 App.D.C. 315.

■ We are of opinion that the solicitor in his brief properly stated that a completely operative and anticipatory structure would result if the conduits of the Solvay device for bubbling the gas successively through the liquid in the different compartments were used in the Wait structure.

Since it appears to us that the claims are clearly unpatentable over the Wait patent in view of that to Solvay, it is unnecessary to further .discuss the British patent.

For the reasons hereinabove set out, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.